Emmott.
This is an addon of covenant, and is brought before the court on two demurrers by the defendants, to the firft and third replications of the plaintiffs. The pleadings are by no means intricate, and though it might be fufficient to confine ourfelves to the demurrers only, yet it is conceived the declaration itfelf is defedive, and therefore the plaintiffs can never recover. The declaration ftates a *430 bond from Rennington to the Tibbits, conditioned for pay . ment of 4000dolls, with intereft by inftalments of lOOOdoIls. eac^ ’ ^lat ^le whole of this being unpaid on the 19th of Jan. ’97, the defendants affigned the bond to the plaintiffs, , , . 6 ^ .* and at the lame time entered into a covenant to pay it themfelves in cafe Rennington ihould become infolvent, or unable to pay it, provided the plaintiffs ihould ufe due diligence by courfe of law, and all legal meafures <c to recover “ the fame immediately after the several sums of money should respeElively become due” It then further ftates a payment of 1000 dollars due on the firft of May 1799, before which time on the 25th of December 1798 Rennington abfconded ; that on the 28th of February 1799 an attachment iffued againft his eftate and effeds under the abfconding debtors’ ad, by virtue of which his property was fold, and produced not enough to pay ten ihillings in the pound, and fo the plaintiffs ftate on the firft of May 1799, and long before he became infolvent and unable to pay his bond. Then a capias and an alias capias ad refpondendum is ftated, with non inventus returned to each; whereby the plaintiffs were unable to compel payment of the inftalments according to the terms of the condition. ,Our firft objedion is, that the adion will not lie till the whole money is due, not till after the firft of May 1801; whereas the prefent fuit was commenced in 1800. This appears from the covenant. The words are, “ not able to pay and fatisfy the faid “ bond.” A perfon may be unable in 1800, yet fully competent in 1801. A fingle default is not fufficient; and even if the fuit might have been inftituted when began, the-averment, in that cafe, does not go far enough: it ought, on the principle juft mentioned, to have ftated the infolvency &c. to have continued, till the commencement of the adion : for, after May 1799 and before fuit brought, Rennington might have been adequate to every demand. The “ and fo,” therefore of the declaration, that Rennington was infolvent, is not warranted by the circumftances preceding, and the averment inconclufive ; nor does a perfon’s being abfent, and his goods fold under the attachment fet forth, prove infolvency or inability. A man, though
*431 out of the jurifdiction of this court, may be able to pay his debts here, though his property ihould be abroad. This, therefore, is equally an infufficient allegation. The averment ought to have been direCt and independent, not drawn - °r r , . . , , , by way of argument; for then it might have gone to a jury, and they might have prefumed him infolvent. But, allowing this to be againft us, it does not appear that due diligence has been ufed. The covenant is, to ufe due diligence by profecuting at law. This has not been done. There is a difference between ufing due diligence, and profecuting at law. The plaintiffs ought to have done both, and not one only. To ffiew the diverfity; fuppofe Rennington had had the money in his hands, and had laid to the plaintiffs that he would pay it if they would call; * inftead of which, they do not call, but proceed, and Rennington afterwards becomes' a bankrupt. This would be taking legal meafures, but not ufing due diligence. The declaration itfelf {hows a want of diligence. The proceedings under the infolvent debtors’ aCt were had in February 1799 ; it does not, however, appear that the plaintiffs ever made any proofs of their debt; or ever demanded a dividend from the infolvent’s eftate. They do not eyen feem to know what it will produce ; they ftate generally that it will not pay ten {hillings in the pound. This furely then is a want of diligence, and legal meafures. Nay, what has been done by them is on the face of it ineffectual: they have only fued out an alias capias ad refpondendum. They ihould have gone on to out- ■ lawry, becaufe by this means a judgment would have been obtained, on which the plaintiffs might have taken the body or die property in execution. The not ftating in the declaration payment of the inftalmentin 1798, is alfo an objection. For if not paid at the day, it was the duty of the plaintiffs to have then proceeded ; this ought to have been made appear, becaufe, if the 1000 dollars was neither paid nor fued for, the plaintiffs loft all right to look to the defendants for any future, fums. This will be deemed no. more than a fair confequence; for, had in May 1798, a
*432 fuit been profecuted, judgment would have been recovered for the whole penalty, which would have flood as a fean<4 would have bound the lands of the obligor. As therefore nothing; of this fort is ftated, the declaration is in . • itfelf wholly defective.
Woodworth and Van Vechten contra. The plaintiffs come before the court as fair purchafers ; therefore, ihould they recover any thing, it is only getting back their own, and the defendants are not injured. The queftion is, what does the law require that they ihould do before they can have a right to recover. This we are told cannot arife till all the inftalments are due. The words of the bond and covenant are an anfwer to this; for they are, that the money is to be paid by inftalments, and that, as they become due, meafures are to be taken for their recovery; on failure of which, the defendants are to pay fuch fums as may be «then” due. It is incongruous to fuppofe a bond to pay by inftalments ihould not be put in fuit, till the laft inftalment is due ; and it is equally fo, that a covenant to pay, if fuch bond ihould not be faithfully difcharged, mult reft unavailed of, when the bond is not complied with. The argument againft the declaration, for not fetting forth the payment in 1798, cannot be maintained. Nothing more is neceffary than to ftate a right to refort to the defendants; that did not accrue till 1799. They are called upon for nothing previous, and if we are fatisfied as to the payment in 1798, it is all the better for them, who are liable for every feparate portion of the whole. Neither can the averment be objected to; we ftate Rennington became and was infolvent. The covenant requires no more ; it does not exact a continuance of his infolvency to be ihewn. If he was at any time unable to pay, it is fufficient; for the covenant does not require that we ihould wait till he becomes folvent again. If this reafoning is good in one inftance, it is in a thoufand, and may be infilled on over and over again. We iliew the infolvency by the abfconding and proceedings under the abfconding debtors’ a¿t ; the nonpayment on the firft of May 1799, and the legal meafures taken by iffuing the writs mentioned. The next objection *433 is the want of due diligence. We are required to inftitute fuits only as the fums become due : that is all the diligence required. The inftalment of ’98 muft be prefumed to have been paid : unnecelfary, therefore, to fue for that; and a writ did iflue for the one in ’99. To continue proceedings on to outlawry, without any chance of recovery, was not only ufelefs, but would have been unjuft, as all the cofts would have fallen on the defendants, the record itfelf Shewing every part of Rennington’s property afligned under the law againft abfconding debtors. It could, therefore, never have been the intention of the parties to thus unneceflarily Saddle themfelves with expenses, and it is a general rule that covenants and conditions fhould be fo expounded, as to ferve the intention of the parties. This Species of diligence could, therefore, never have been contemplated. The covenant of the defendants' was in cafe of Rennington’s infolvency or inability, to place themfelves in his fituation, and pay as he would have done, by instalments. The inadequacy of the eftate of Rehnington to pay more than 10/. in the pound, is a proof of his incapability, and it does not appear that even that has been paid, or could have been received. Allowing Rennington to have property abroad, and fo in faR not infolvent, we are not to look; to any thing beyond this ftate, and tire jurifdidtion within which the covenant was made. On our part nothing appears to bind us to prove our debt. It was not our duty the defendants are the legal creditors, and we could be only at the moft truftees. They, therefore, having the legal right, are the parties who ought to have come forward to fubftantiate the demand. As to the payment of ’98, we are at iflue on that, though we fuppofe, whether paid or not, is immaterial; for, as we may now remit the whole, and exonerate from all, we furely have the fame right over a part.
Harrifon in reply. That the intent of the parties is to govern, we are on both lides agreed. What that is, muft, however, be ihewn from the instrument; nor can the court look beyond it. The cafes in which the defendants are to be liable, depend on conditions precedent. If fo, then not *434 only an infolvency, and inablity in Rennington to pay muffc be ihewn, but initantly afterwards, due diligence and legal meafures. Even the infolvency and inability is not ihewn politively ; it is only <c et fic •” now á feizure and fale of all a man’s eftate and effects in one county, and their being infufficient, is not enough; there may be more than enough to pay all his debts in another. In trover, a demand and refufal is evidence of a converiion $ yet, if ftated in the pleadings, that the articles by finding came into the hands of the defendant, who on demand refufed to deliver them, and so he converted them, it would not be good, becaufe the demand and refufal might not amount to a converiion. The necefiity of further proceedings than the mere iffuing a capias and an alias capias will fully appear, if it be confider-ed, that had a judgment been obtained, it would have bound fubfequently acquired lands, and even in the hands of executors. Befides, the diligence covenanted for requires more. The plaintiffs held the only evidence of the debt due from Rennington; this they ought to have proved under the aifignment made by virtue of the abfconding debtors’ aft, that thofe for whom it was held might come in for the benefit of a dividend on the amount.' Allowing, therefore, the infolvency and our liability, the court will neceffarily fay we are, on this ground, difcharged. The paffing over the firft inftalment is not quite clear. It is contended the plaintiffs might remit that payment. No fuch thing; for if unable, and in tottering circumftances, legal fteps ought to have been initantly taken, and a judgment obtained for the amount of the whole bond to give that priority and lien which now is loft. It was giving time, and that will make the debt the plaintiffs’ own. The obtaining payment of the firft inftalment, was a condition precedent to our liability, and ought therefore to have been ihewn. As it has not, the defendants cannot be called on in this aftion.
Thompfon J. The exceptions taken to the declaration are,
lft. That no aftion could be maintained on the covenant againft the defendants until the laft inftalment in the bond fell due, which was in May 1801. The prefent aftion was commenced in 1800.
*435 2d. The infolvency, or inability of Rennington to pay, is not fufficiently averred.
3d. It does not.appear that due diligence has been ufed againft Rennington, to recover the money.
4th. No notice is taken of the payment that fell due firft of May ’98.
I think all the objections untenable. The reafon urged in fupport of the firft is, that although Rennington might have been infolvent in the year ’99, the time alleged in the declaration, he might not have been fo in the year 1801, when the laft inftalment fell due; and that the covenant only goes to the eventual refponfibility of Rennington. This conftruCtion appears to me not warranted, either by :the terms of the covenant, or what may reafonably be prefumed to be the intention of the parties. The bond is made payable by inftalments ; the general object of the covenant was, to make the defendants refponfible for thofe payments, and a fair interpretation would be, unlefs a contrary intention was clearly inferable from the terms of the covenant, that they became fecurity to pay, according to the condition of the bond, in cafe of Rennington’s infolvency, or inability to pay. This conftruCtion is conformable to the general intent and underftanding of parties with refpeét to fecurities, and there feems nothing peculiar in the phrafeology of this covenant, to warrant a different concluiion. The covenant exprefsly refers to the bond, and purports to guarantee the payment, I think, according to the condition; and if fo, there is a breach of the covenant, whenever there is a failure of payment agreeable to the terms of the bond. The ailignees have purfued the obligor according to the provifions contained in the covenant. If this covenant would warrant a different conftruclion, it would be, I think, that the whole fum was payable by the defendants, immediately on the infolvency of Rennington ; for the covenant concludes, that then, and in fuch cafe (alluding to the infolvency) they were to pay “ the amount of the fald bond-, or fuch ^ part as remained due” The rcfult, however, as it refpeils the prefent queftion, would be the fame, on either conftruction. The infolvency or inability of Rennington to pay, ap *436 pears to me to be fully, and fufficiently averred. The averment is in the very terms of the covenant, to wit, That on t^le íñ'A day of May 1799, and long before the faid Jonathan was infolvent, and not able to pay and fatisfy the faid bond. It is faid, however, this is a dependent averment, and is alleged as a conciuiion drawn from a detail of faffs, and which do not warrant the inference. The faffs Rated, appear to me, fully to warrant the conciuiion drawn.. They are, that Rennington had fome time previoufly abfconded, and departed from this Rate to parts unknown, and Rill doth continue abfent from the Rate at fome place unknown j that he had been duly proceeded againA as an abfconding debtor 5 and that the refult was, that his eRate was not fufflcient to pay his creditors ten '{hillings in the pound. It was admitted, on the argument, by the defendants’ counfel, that if the averment had been general, that Ranningfon was infolvent, and unable to pay, without detailing the faffs from 'which the conciuiion was drawn', the declaration would have been good. Admit the declaration to have been thus drawn, and hTue had been taken upon the folvcncy of Rennington, and the faffs detailed in the declaration had been proved on the trial, would they not have warranted the jury in pronouncing him infolvent, or unable to pay the bond ? I think, clearly, they w ouid. Thefe faffs being admitted by the demurrer, I think the court is bound to make the fame conciuiion. It is alfo faid, the plaintiffs ought to have fliewn, how much they had received on a diflribution of Renningtcn’s eRate among his creditors. This appears to me to be rather matter of defence, and incumbent on the •defendants to prove. If the plaintiffs had received any thing, it would have been proper evidence, under their plea of payment by Rennington. Befides, the declaration does "contain an averment that they have not received payment • for the inRalments, for which the aff ion is brought.
The third exception is, that the plaintiffs have not fliewn due diligence in profecuting Rennington; that they ought to have proceeded to outlawry. I think it manifefl, that fuch extraordinary proceedings were not in contemplation of •the parties 5 and, therefore, that the covenant ought not to *437 receive fuch a conilruftion as to make them requifite, unlefs clearly warranted by the terms. The plaintiffs were to ufe all due diligence, and take all legal meafures, by profecution at law, to recover the money from Rennington. By which I would underftand, all ordinary legal meafures profecuted with good faith. In the prefent cafe, the plaintiffs allege, that foon after Rennington abfconded, proceedings were commenced againlt him as an abfconding debtor, and profecuted with due diligence, in order to iecure his property ; and, for the purpofe of arrefting his perfon, ordinary procefs iffued on the very day the payment fell due; all which, I think, ftiew due diligence, fufficient to fatisfy the terms of the covenant, and the intention of the parties.
The laft exception is, that no notice is taken of the payment that fell due on the firit of May ’93 It is, I think, a fufficient anfvver, to fay, that no demand is made of the defendants for that inftalment; and the prefumption is, that it has been paid, lince the plaintiffs were bound to proceed againft Rennington as foon as the payment fell due, which they appear to have done with refpeét to the fecond inftalment, the very day it became payable. Any delay or laches of the plaintiffs in this refpec?i, however, it appears to me, can only be alleged, when a demand is made upon them for that inftalment. It is faid, that if a fuit had been commenced on the bond for the iirft payment, the judgment would have been for the penalty, and would have beeri a fecurity on his property for the future payments. This objection fails, without affirming feveral faffs of which nothing appears. No evidence, that there was any default with refpedt to this payment 5 or, but that a fuit was commenced, and fatisfa&ion made before judgment 5 or that he had any real eftate which the judgment would have bound. If there were any circumftauces of this kind, whereby any lofs might probably be fuftained for want of due diligence in procuring payment of the iirft inftalment, it might have been proper evidence for the defendants to have availed themfelves of on the iiiue with refpeft to due diligence, but can never be ground for the demurrer to-the declaration. I am, therefore, of opinion, that neither of the cxceo-
*438 t"10ns are W®U taken, and that the plaintiffs ought to have judgment;
Radcliff J. The firft and principal objeñion is founded on a ftridt and literal conftrudtion of the terms of the covenant. The bond is conditioned for the payment of four annual inftalments, of 10Q01 dollars each. The defendants affigned this bond to the plaintiffs, and covenanted, that in cafe the obligor fhould become infolvent, or not be able to pay the faid bond', and if the plaintiffs fhould ufe due diligence, &c. to recover the fame, “ immediately after the faid feveral fums of money exprejfed in the condition, should refpectively become due, and fhould not be able to compel , the payment thereof, then the defendants would pay to the plaintiffs, the amount of the faid bond with intereft, or fuch part thereof as should then remain due.” It was contended by the defendants’ counfel, that by the terms of this covenant, the defendants cannot be held to pay, until all the inftalments fhall become due ; becaufe the covenant is entire, and contemplates a fingle payment of the amount of the faid bond, or fuch part thereof as shall remain due. Confined to, thefe terms, it would be fufceptible of this interpretation. But, I think, it would equally admit of the oppofite conftrudtion : that on tire failure of the obligor to pay the firft inftalment, the defendants fhould be liable to' pay the whole. The event in which the defendants were to become anfwerable, was the insolvency of the obligor, or as it is ex-preffed in the covenant, if he fhould not be able to pay the said bond, See. and if the plaintiffs could not recover the same (the bond) then the defendants would pay the amount of the said bond. If the obligor was not able to pay the bond; and the plaintiffs not able to recover the bond, immediately after the respeBive inftalments became due, then the cafus occurred, and the defendants were to pay the bond, not any particular inftalment. Now, if the term bond, is to be conftrued in the fame fenfe throughout this covenant, as the penalty would become legally forfeited on the failure of the firft payment, the defendants, according to the letter of their engagement, might be confidered liable to pay the whole bond. There is an additional reafon too, in fayour of this *439 conftruclion : for, the moment the infolvency of the obligor happened, there could remain little hope or expectation of recovering the fubfequent inftalments from him; and it might rationally be intended, that the defendants fhould at once take back their fecurity againft him, and pay the plaintiffs the confideration of the affignment which they had already received. But I think either of thefe conftructions too rigorous, and oppofed to the intent of the covenant. The bond was due to the defendants by inftalments. The fums in the condition were, in reality the debt. By the affignment, they meant to fubftitute the plaintiffs in their ftead, and they guaranteed the folvency of the obligor, and the payment by him, according to the terms of the condition. This was the fubftance of the contradi, and the foundation of the covenant; which, I threfore think, ought to be taken diftributively, and deemed a continuing covenant, on which the defendants would be liable on the failure of the payment of each inftalment.
With refpedt to the other objections which have been ftated, I acquiefce in the opinion already delivered, and generally for the reafoas which have been affigned.
I am, therefore, of opinion, that the plaintiffs are entitled to judgment on the demurrers.
Kent J. This cafe comes before the court on demurrer to the firft and third replications. Upon the argument of thefe demurrers, the counfel for the defendants, relied upon what they contended to be fubftantial defeCts in the declaration. It was there that the firft fault was to be found, and to which they chofe to refort.
The aCIion was commenced in July term 1800, and the laft inftalment on the bond, was payable on the firft of May 1801; and it was contended, that the defendants were not liable upon their covenant until all the monies on the bond became due. An important queftion accordingly arifes on the conftruCtion of the covenant. It was to pay the amount of the bond with interest, or such part as should remain due, and unpaid. But there were two conditions precedent to recovery upon this covenant :
*440 . iff. That the obligor ihould become infolvent, or not a-0 to pay and fatisfy the bond.
^d. That the plaintiffs ihould have ufed all due diligence, and have taken all legal meafures, by profecution at law, to 1****& . recover the same¡ and tnat too, immediately after the feveral fums of money ihould refpeCtively have become due, and ihould not have been able, by fuch means, to have compelled the payment thereof. The bond was payable by inftalments ; and, there can be no doubt, but that the obligor was liable to fuit on default of payment of any of the inftalments. 1 Wils. 80. Sayer 29. Buller 168. 2 Black. Rep. 706. As to the cafes in Co. Litt. 292. b. and 1 H. Black 547. they relate only to debt on limpie'contradi, or Angle bill. But the covenant, was not, by the terms of it, to indemnify by inftalments : It was, to pay the amount of the bond ; and that too, only upon the condition that the obligor was not able to pay the bond, and that the plaintiffs had. ufed all legal means to recover the fame, immediately after the fums had respectively become due, and had not been able to compel payment. The language of the covenant throughout, has reference to the bond, as one entire debt, and the payment to be made by the defendants in purfuance of the covenant, was of one aggregate or entire fum ; or, fo much thereof, as ihould remain unpaid. I am of opinion, therefore, that the defendants were not liable, on their, covenant, until all the payments on the bond had become due. The burthen of fuing and collecting the inftalments was, by the affignment, caft upon the plaintiffs; and if they could re-fort to the defendants on the Aril, or any default prior to the ultimate one, they muft be entitled to recover the whole amount ¿f the bond from the defendants before all the inftalments were due, and before the legal means had been ufed to afcertain whether the obligor was, or was not, competent to pay. This would be contravening the exprefs words of the covenant, which were, that the defendants were not to pay until all fuch means had been ufed, as the inftalments refpeCtively became due. It would be calling back upon the defendants the burthen of uftng thefe means, which the plaintiffs had, by the contradi, affumed. Thefe confequen *441 ces appear tó me to refult from the doitrine maintained by 11 ‘ the plaintiffs, and they are too inconfiftent, with the covenant, to be admitted. If, however, the plaintiffs were not entitled to recover the whole amount of the bond, but only the amount of the inftalment in arrear, then it would follow, that the defendants would be fubject to different fuits, upon the covenant, as the defaults on the part of the obligor íhould refpectively arife. But this confequence would be againit the rule of law : that, for one entire contradi, there ihail be but one action, and would fubject the defendants to the manifeft inconvenience of not having it in their power, by the return, and re-ownerihip of the bond, to try the experiment of legal means, on their part, againit the obligor. For, I take it for granted, that while the plaintiffs were lawful owners of the bond (and they would continue owners, until default in the laft inftalment) the defendants could not inftitute a fuit upon it; for this might lead to the abfurdity of concurrent fuits, at the fame time, on one inftrument, for die fame penalty, and for the ufe of different perfons.
In every view which I can take of this covenant, it admits of but one conftrudtion. It was one fimple and entire engagement! The infolvency of the obligor, and the efforts of the plaintiffs, were to be firft Ihewn with refpecfc to all the inftalments. It might be, that the obligor would return, and be able to pay the bond when the laft inftalment fell due. The prefent fuit being brought before this period, was- prematurely brought, and before the caufe of adtion arofe. I am, therefore, of opinion that, on this ground, judgment ought to be given for the defendants.
There was another ground taken by the defendantthat might merit fome confideration. I mean, the want of an averment in the declaration, that the firft inftalment was paid, or that due means had been ufed to recover it. But it is not neceffary for me, at prefent, to examine any other point than the one I have confidered.
Lewis C. J. The queftion now before the court is, Has there been, on the part of the plaintiffs, a failure in the performance of the condition, on which the defendants, cove-
*442 nanted to pay. m the event of the inability or mfolvency of r ' the obligor r
It is contended on the part of the defendants, that the plaintiffs were not entitled to recover until the laft inftalment ihould have fallen due; and then only, on ihewing they had duly profecuted for each as they refpedtively
became due. That the abfconding of Rennington, and the proceedings againft him under the abfconding debtors’ adt, werenot conclufive evidence of his infolvency. That though, perhaps, infolvent on the firft of May 1799, -when the fecond inftalment was payable, he might have been folvent at the time of the third or laft inftalment becoming due. That the terms, “ all due diligence,” could only be fatisfied by a profecution to outlawry ; and that the plaintiffs ought to have applied for, and received, their dividend under the affignment.
There are two events, in either of which, the defendants engage to be refponfible. The one is, the infolvency of Rennington. The other, his not being able to fay and satisfy the ¡>ond. Thefe might be confidered one and the fame thing, were it not that the parties intended to diftinguiih between them. They are in the disjundtive : the one coupled with a condition, the other unconditional. The diftindtion, in the underftanding of the parties, could be no other, than that„ between an incapacity in Rennington to difcharge his debts generally, and a mere inability to difcharge the bond, according to its condition. In the firft inftance, the condition compelling the plaintiffs to profecute, would have been ufelefs ; in the fecond, it might eventually fecure the debt.
The firft queftion then, is, was Rennington infolvent within the meaning of the contradi ? It is ftated, and not denied, that he had abfconded before the inftalment payable in ’99 ; had abfented himfelf from the ftate, and continued without it, at the time of bringing the fuit. That alfo, previous to that period, his property had been affigned under the abfconding debtors’ adt; and that it neated a dividend of but 10/ in the pound. On fuch afiignment, the debtor’s property is divefted, his mercantile operations are fufpended. No payments can be made to him, nor can he
*443 difpofe of his property. This, in my conception, is a compíete ftate of infolvency. Proceedings under the infolvent adt are not neceflary to conftitute it. That adt is intended as a benefit to the unfortunate, who mult be aBually htfolvent before they can have relief under it.
But, admitting that in contemplation of the parties, no
diftindtion was intended between the cafes of the infolvency of Rennington, and his inability to pay, according to the condition of the bond. But that, in every event, he was bound to profecute on default of the obligor.—Has he not complied with fuch condition ? On the very day on which the firft default took place he iffued a capias, and on its return, an alias. Rennington could not be taken, being out of the jurifdidtion. To profecute to outlawry, a man whofe property had been already aíügned for the benefit of his creditors, would have been an ufelefs expenfe, and could not have added to the fecurity of the debt. The law, therefore, would not impofe it upon them. And as the fuit was in the name of the defendants, and in effedt, for their benefit, they might have continued the profecution had they chofen fo to do.
As to the plaintiffs inftituting a new fuit on the fecond default, viz. on the nonpayment of the inftalment due in 1800, thisalfo would have been ufelefs. For, could a recovery have been had in the firft fuit, it would have anfwered every beneficial purpofe. The judgment would have been Tor the penalty, and would have remained a fecurity for the future inftalments.
With refpedt to the plaintiffs’ not applying for a dividend, there appear two anfwers to the objedtion : Firft, It does not appear, on the pleadings, that the dividend has not been received. Second, The defendants were the proper perfons to apply for it. They were the obligees originally, and, when the afiignment under the adt took place, the poffibility of recovery was defeated | they, by the terms of the contradi, then became the fubftitutes of Rennington to the plaintiffs, and were to look to him, or his property, for an indemnity. On every ground, I am of opinion, judgment muff be for the plaintiffs.

 If a man owe money on bond, he mult feck out the obligee, to tender it when due, Litt, Sec. 340.